02-10-190-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00190-CR

 

 


 
 
 Robert Brandon Ryals
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM County
Criminal Court No. 9 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

The
question in this DWI appeal is whether a police officer can make an
investigative detention of a driver of an automobile after being told by a
nervous and excited young boy that the driver had attempted to get him in the
driver’s car.  Under the circumstances of this case, we answer yes and affirm
the trial court=s order.

Background

Appellant Robert Brandon Ryals was stopped by
the police for investigative purposes.  When he was determined to be
intoxicated, he was arrested and charged with DWI subsequent offense.

Appellant
filed a motion to suppress any evidence discovered as a result of the detention. 
Appellant argued that the officer had only vague and limited information of
questionable reliability and that he did not have a reasonable suspicion of any
connection to criminal activity.

At
the subsequent suppression hearing, Fort Worth police officer Gregory Riddle
was the only witness to testify.  He testified that he was a college graduate
who had been a certified peace officer for sixteen years.  His duties were to
answer calls made by citizens, conduct traffic stops, and make investigations
when necessary.  At approximately 5:00 p.m. on April 29, 2009, Officer Riddle was
stopped at a traffic light in his marked patrol car at the intersection of
Miller Avenue and Rosedale Street in Fort Worth when a nervous and excited
black male, perceived by the officer to be twelve-to-thirteen years old, approached
and told him, AThe guy in that car tried to get me in the
car,@ pointing
at a red Mustang convertible located eastbound on Rosedale.  Officer Riddle
motioned to Officer Garcia, another police officer who was behind him, to come
with him.  The officers then made a U-turn and stopped the red convertible that
Appellant was driving.  The boy, Anthony McFarland, was present at the scene of
the detention.

When
asked why he had stopped the vehicle, Officer Riddle stated:

“Based on what I was
told by the witness, I felt I had reasonable suspicion to stop this vehicle
because it could have been a possible abduction, kidnapping.  I didn’t know . . .
Just the
limited amount of what the witness had told me, I felt I had enough reasonable
suspicion to stop.

 

On
cross-examination, when asked whether McFarland had mentioned any physical
contact or threat of force, Officer Riddle stated, “Not initially.”

At
the end of the suppression hearing, Appellant’s counsel was granted permission
to furnish the trial court a memorandum of law on the issue of whether the
officer had reasonable suspicion to make the detention in question.

On
December 10, 2009, the court stated

After reviewing all
the submitted authorities, I=m going to deny the motion to suppress, and I will note
these facts for the record:  That Officer Riddle, while in the vicinity of
where these events occurred, was approached by a youth that appeared to be
between the ages of 12 and 13 years of age, who had a nervous demeanor, who
made the comment to the officer that an individual had tried to get him in a
car, at which time he pointed out the vehicle and identified the vehicle driven
by the [defendant] as the vehicle with the person that tried to get him in a
car.

 

Those are the facts
the Court finds significant prior to a stop occurring.  The Court will note
that the essence of a detention is, when an officer is presented with ambiguous
facts, for the officer to make a temporary detention of the individual to
determine whether or not further investigation is warranted.  And in keeping
with that logic, the Court will find the detention of the [d]efendant in this
case was appropriate and will deny the motion to suppress.  That=s the Court=s order.

 

After
the conclusion of this hearing, a plea bargain was reached in which the State
waived the enhancement paragraph of the information.  The Appellant pleaded
guilty to a lesser offense, Class B misdemeanor DWI.  The trial court assessed
a fine of $500 and sentenced Appellant to 120 days in jail, but it suspended
imposition of the confinement portion and placed Appellant on community supervision.

On
appeal, Appellant claims that the trial court erred in denying his motion to
suppress because there was no reasonable suspicion that Appellant had engaged
in anything related to criminal activity.  He argues that Officer Riddle had no
knowledge of whether McFarland was telling the truth or sending him off on a
wild goose chase as a practical joke; Officer Riddle had no knowledge of
whether McFarland was reliable and trustworthy; and the record does not suggest
Officer Riddle knew McFarland before he approached.  In sum, Appellant argues the
information that McFarland provided to Officer Riddle included insufficient
detail and reliability that when combined with rational inferences from those
facts, would objectively lead an officer to reasonably conclude Appellant was,
had been, or would soon be engaged in criminal activity.

Applicable
Law

We
review a trial court’s ruling on a motion to suppress for an abuse of
discretion.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000); Lemmons v. State, 133 S.W.3d 751, 755 (Tex. App.—Fort Worth 2004,
pet. ref’d).  We afford almost total deference to a trial court’s determination
of historical facts that the record supports, especially when the trial court’s
fact findings are based upon an evaluation of credibility and demeanor.  State
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  We afford the same
amount of deference to the trial court’s rulings on mixed questions of law and
fact if the resolution of those questions turns on an evaluation of credibility
and demeanor.  Carmouche, 10 S.W.3d at 332–33; Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We review de novo, however, the
trial court’s application of law to the facts in determining whether reasonable
suspicion supported an investigative detention.  See Carmouche, 10
S.W.3d at 327–28; Guzman, 955 S.W.2d at 89; Lemmons,
133 S.W.3d at 755.

An investigative “stop” by law enforcement personnel is a sufficient
intrusion on an individual’s privacy to implicate the Fourth Amendment’s
protections.  United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S. Ct.
2574, 2578–79 (1975); Terry v. Ohio, 392 U.S. 1, 16–17, 88 S. Ct.
1868, 1877 (1968).  Nevertheless, an officer is generally justified in briefly
detaining an individual on less than probable cause to investigate the
possibility of criminal behavior.  Terry, 392 U.S. at 22, 88 S. Ct.
at 1880; Woods v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997).  An
investigative detention is justified when the officer possesses a reasonable
suspicion; that is, the officer is able to point to specific, articulable facts
that, taken together with rational inferences from those facts, reasonably
warrant the detention.  Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim.
App. 1997); Garza v. State, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989).  The
articulable facts used by the officer must indicate that some activity out of
the ordinary is occurring or has occurred, that the detainee
is connected with the unusual activity, and that the unusual activity is
related to a crime.  Garza, 771 S.W.2d at 558; State v. Adkins,
829 S.W.2d 900, 901 (Tex. App.—Fort Worth 1992, pet. ref’d).  The reasonable
suspicion determination is made by considering the totality of the
circumstances.  Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App.
2001); Lemmons, 133 S.W.3d at 756.  The facts and circumstances that
provide a reasonable suspicion of criminal activity need not be criminal in
nature themselves as long as they include facts that in some way would increase
the likelihood of the presence or occurrence of criminal activity.  See
Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991).  Under the
reasonable suspicion standard, if circumstances are consistent with criminal
activity, “they permit—even demand—an investigation:  the public rightfully
expects a police officer to inquire into such circumstances” in the proper
discharge of the officer’s duties.  Woods, 956 S.W.2d at 37.

In
deciding whether the facts of the situation would justify an investigative
detention, it is expected that an officer will draw on
his experience and personal knowledge.  Garza, 771 S.W.2d at 558.  “‘When
used by trained law enforcement officers, objective facts, meaningless to the
untrained, can be combined with permissible deductions from such facts to form
a legitimate basis for suspicion of a particular person . . . .’”
 Woods, 956 S.W.2d at 37–38 (quoting United States v. Cortez, 449
U.S. 411, 419, 101 S. Ct. 690, 695–96 (1981)).  Information given to an
officer by a named informant is the most reliable form of tip information.  See
Derichsweiler v. State, No. PD-0176-10, 2011 WL 255299, at *6 (Tex. Crim.
App. Jan. 26, 2011); State v. Stolte, 991 S.W.2d 336, 341 (Tex. App.—Fort
Worth 1999, no pet.).

And
further the officer has to only have a reasonable belief formed at the time he
receives it that the person to be detained was, has been, or is possibly about
to engage in something related to criminal activity.  See Crain v.
State, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  See also United States v.
Sokolow, 490 U.S. 1, 12, 109 S. Ct. 1581, 1588 (1989) (Marshall, J.,
dissenting) (“The reasonable-suspicion standard is a derivation of the
probable-cause command, applicable only to those brief detentions which fall
short of being full-scale searches and seizures and which are necessitated by
law enforcement exigencies such as the need to stop ongoing crimes, to
prevent imminent crimes, and to protect law enforcement officers in highly
charged situations.”) (emphasis added); Terry, 392 U.S. at 27–28, 88 S. Ct.
at 1883 (1968) (officer’s conduct of stopping the suspects and conducting a pat-down
for weapons was reasonable at its inception and as conducted because officer
observed them acting in a manner “he took to be preface to a ‘stick-up.’”  That
is, their actions were “consistent with [the officer’s] hypothesis that these
men were contemplating a daylight robbery.”)

Analysis

          Since
Appellant does not dispute the trial court’s findings of fact, we proceed to
the legal question of whether the trial court correctly applied the law to
these facts, specifically whether the totality of these circumstances satisfied
the State’s burden to prove that the warrantless investigative detention was supported
by reasonable suspicion that Appellant is, has been, or soon will be engaged in
some matter which in some manner may be connected to possible criminal activity
at the time the police pulled him over.  We believe it does.

In ruling
on the motion to suppress, the trial court characterized the information given
by the boy as “ambiguous,” meaning, we believe, that Appellant could have been
merely offering the youngster a ride or that Appellant had a more nefarious
motive related to some form of criminal activity, such as a prelude to a
kidnapping or abduction, as the officer stated, or some manner of criminal
attempt by a pedophile or other sexual predator.  In any event, the trial court
could have inferred that an exigent circumstance existed in the officer’s mind,
based on his experience and background, that called for at least an explanation
and that Appellant was going to disappear unless the officer took action.  We
would objectively expect that a police officer would do this.  If, when
stopped, Appellant had a reasonable explanation for his actions, the matter
could have been quickly resolved since McFarland was still on the scene.

As our Court of Criminal Appeals recently
stated in Derichsweiler cited above:

It
matters not that all of this conduct could be construed as innocent of itself;
for purposes of a reasonable-suspicion analysis, it is enough that the totality
of the circumstances, viewed objectively and in the aggregate, suggests the
realistic possibility of a criminal motive, however amorphous, that was about
to be acted upon.  Under these circumstances, the Fourth Amendment permits the
police to make a brief stop to investigate, if only by their presence to avert
an inchoate offense.

 

2011
WL 255299, at *6.  We overrule Appellant’s sole issue.

Conclusion

We
affirm the order of the trial court.

                                                                   

 

PER
CURIAM

 

PANEL:  CHARLES R. HOLCOMB (Senior Judge, Retired,
Sitting By Assignment); DAUPHINOT and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  May 26, 2011









[1]See Tex. R. App. P. 47.4.