COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

                                                    

                                        NO.
2-08-380-CR

 

 

BRADLEY CHANCE WELLS                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY CRIMINAL
COURT NO. 3 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                        I. Introduction

In one point, appellant Bradley Chance Wells
appeals his conviction for driving while intoxicated (DWI), asserting that the
trial court erred by denying his motion to suppress.  We will affirm.

                                 II.
Factual Background








At approximately 1:46 a.m. on a Saturday, Roanoke
Police Officer Jean Ann Grey saw Wells=s truck
illegally parked in the parking lot of an apartment complex located on Parish
Lane between State Highway 377 and Roanoke Road.  As Officer Grey began to approach the truck
in her squad car, the driver of the truck, Wells, turned on the truck=s
headlights and exited the parking lot onto Parish Lane.  Officer Grey followed Wells and watched him
turn right onto Highway 377.  She
initiated a traffic stop based on her belief that Wells failed to signal a
right turn onto Highway 377 within 100 feet of turning.[2]  A driver who intends to turn commits a
traffic offense if he does not signal continuously for at least the last 100
feet of movement before the turn.[3]


Upon exiting her squad car and approaching the
truck, Officer Grey noticed that Wells=s eyes
appeared glassy and bloodshot, that his hands were shaking, and that he
appeared nervous.  She also detected a
strong odor of alcohol coming from inside the truck.  Upon questioning, Wells admitted that he had
consumed alcohol earlier in the evening. 
Officer Grey then conducted a series of field sobriety tests on Wells,
which he failed.  The officer arrested
Wells for DWI.








                                  III.
Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and demeanor
of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818B19.  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.

When the record is silent on the reasons for the
trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then
review the trial court=s legal ruling de novo unless
the implied fact findings supported by the record are also dispositive of the
legal ruling.  Kelly, 204 S.W.3d
at 819.








                                 IV. 
Motion to Suppress

In Wells=s sole
point, he contends that the trial court erred by overruling his motion to
suppress because Officer Grey did not have reasonable suspicion to believe that
a traffic violation had occurred.

                                   A.  Reasonable Suspicion

A police officer has the authority to stop and
temporarily detain a driver who has violated a traffic law.  See Garcia v. State, 827 S.W.2d
937, 944 (Tex. Crim. App. 1992); Armitage v. State, 637 S.W.2d 936, 939
(Tex. Crim. App. 1982).  An automobile
stop is justified when an officer has reasonable suspicion to believe that a
traffic violation has occurred.  Goudeau
v. State, 209 S.W.3d 713, 716 (Tex. App.CHouston
[14th Dist.] 2006, no pet.).  Reasonable
suspicion exists if the officer has specific, articulable facts that, combined
with rational inferences from those facts, would lead him to reasonably
conclude that a particular person actually is, has been, or will soon be
engaged in criminal activity.  Castro
v. State, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).  Once an officer makes a bona fide stop or
arrest for a traffic offense, he can make additional arrests for any other
offense unexpectedly discovered while investigating or questioning a motorist.  See Lemmons v. State, 133 S.W.3d 751,
757 (Tex. App.CFort Worth 2004, pet. ref=d).








The transportation code provides that the
operator of a motor vehicle shall signal to indicate an intention to turn. Tex.
Transp. Code Ann. ' 545.104(a).  An operator intending to turn right or left
must signal continuously for not less than the last 100 feet of movement before
the turn.  Id. '
545.104(b).  This requirement is
mandatory and it therefore follows that failure to employ a vehicle=s signal
to indicate an upcoming turn constitutes a traffic offense.  Lemmons, 133 S.W.3d at 757.

              B.  Reasonable Suspicion to Support Officer Grey=s Stop

In the present case, Officer Grey testified that
she stopped Wells after witnessing him commit Athe
traffic violation of not signaling the intent to turn within a 100 [sic] feet,
as the statute requires.@ 
She did not know how long Wells signaled continuously before turning or
how far he was from Highway 377 when he turned on his blinker.  She explained that she was Anot an
expert on the distance@ but that Ahe was
[close] to the stop sign, it was definitely within a 100 [sic] feet.@  The officer testified that she had no way of
knowing when Wells decided to turn right until he turned on his blinker.








Wells argued to the trial court and contends on
appeal that a driver must possess the intent to turn before he is
obligated to signal a turn under section 545.104.  Under Wells=s
proposed interpretation of section 545.104, an officer would need some sort of
notice or indication that a driver has an intention to turn 100 feet before
actually turning in order for the officer to have reasonable suspicion that the
driver violated section 545.104.[4]  In this case, according to Wells, because
Officer Grey testified that she had no way of knowing when Wells decided to
turn, she lacked reasonable suspicion to believe that he was violating section
545.104.

When interpreting statutes, we seek to effectuate
the intent or purpose of the legislators who enacted them.  See Camacho v. State, 765 S.W.2d 431,
433 (Tex. Crim. App. 1989).  If the
statute is clear and unambiguous, the plain meaning of the words should be
applied.  Hines v. State, 75
S.W.3d 444, 447 (Tex. Crim. App. 2002); Boykin v. State, 818 S.W.2d 782,
785 (Tex. Crim. App. 1991).  However, if
an application of the plain language would lead to an absurd result that the
legislature could not have intended, we may look to extra‑textual factors
to arrive at a sensible interpretation of the statute.  See Hines, 75 S.W.3d at 447; Boykin,
818 S.W.2d at 785B86.








Section 545.104 specifically provides that an
operator shall use a signal to indicate an intention to turn and that A[a]n
operator intending to turn a vehicle right or left shall signal continuously
for not less than the last 100 feet of movement of the vehicle before the turn.@  Tex. Transp. Code Ann. ' 545.104.  The plain language of section 545.104(a)
indicates that signals are mandatory when turning.  See Lemmons, 133 S.W.3d 751 at 756;
Trahan v. State, 16 S.W.3d 146, 147 (Tex. App.CBeaumont
2000, no pet.).  Moreover, section
545.104 applies whenever the driver has an Aintention
to turn,@ not
whenever a driver has an intention to turn and such intention to turn exists
100 feet before he actually turns. 
Tex. Transp. Code Ann. ' 545.104(a);
see Krug v. State, 86 S.W.3d 764, 766 (Tex. App.CEl Paso
2002, pet. ref=d).  If the legislature had intended to say, AA driver
who intends to turn 100 feet before turning shall signal that intent to turn,@ it
simply could have said so.  Instead, the
legislature provided that A[a]n
operator intending to turn . . . shall signal continuously for not less than
the last 100 feet of movement.@  Tex. Transp. Code Ann. ' 545.104(b).








Our opinion in Tucker v. State, 183 S.W.3d
501 (Tex. App.CFort Worth 2005, no pet.)
provides some guidance.  In Tucker,
the officer stopped the appellant for failing to signal his intention to turn
and found drugs in the car.  The
appellant argued that because the police officer did not have a clear view of
the road for the entire 100 feet before the stop, no evidence supported the
stop.  Id. at 507.  But in upholding the initial stop, this court
noted that Athe officer=s
testimony was clear that at least at the time the car reached the stop sign
the driver had not signaled to turn.@  Id.

Here, Wells turned right onto Highway 377; thus,
it logically follows that he must have Aintend[ed]
to turn.@  See Tex. Transp. Code Ann. ' 545.104(b).
And Officer Grey testified that Wells did not signal continuously for the last
100 feet before he turned.  Based on the
plain language of the statute, Officer Grey did not need reasonable suspicion
that Wells intended to turn 100 feet prior to his execution of the turn.  See id.  The fact that she witnessed Wells turn
without signaling his intention to turn until within 100 feet of the stop sign
was sufficient for her to form the reasonable suspicion that Wells had
committed a traffic violation.  See
Tucker, 183 S.W.3d at 507.








Additionally, the State was not required to prove
that Wells violated a traffic law or to prove every element of a specific
offense, but only that Officer Grey reasonably believed that Wells was
committing a traffic violation.  See
McQuarters v. State, 58 S.W.3d 250, 255 (Tex. App.CFort
Worth 2001, pet. ref=d); Green v. State, 93
S.W.3d 541, 544 (Tex. App.CTexarkana
2002, pet. ref=d); Martinez v. State, 29
S.W.3d 609, 611B12 (Tex. App.CHouston
[1st Dist.] 2000, pet. ref=d); see
also Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (AThe
reasonable suspicion determination is made by considering the totality of the
circumstances.@).  The State only needed to elicit testimony
that Officer Grey knew sufficient facts to reasonably suspect that Wells had
violated a traffic law.  See Garcia,
43 S.W.3d at 530.  In light of the fact
that Officer Grey witnessed Wells turn without signaling continuously for 100
feet prior to turning, Officer Grey could have rationally inferred that Wells
was committing a traffic violation.  See
id.; McQuarters, 58 S.W.3d at 255. 
Consequently, viewing the evidence in the light most favorable to the
trial court=s ruling, we hold that Officer
Grey testified to specific, articulable facts that would lead her to reasonably
conclude that Wells was committing a traffic violation.  See Castro, 227 S.W.3d at
737.  We therefore hold that the trial
court did not err by denying Wells=s motion
to suppress, and we overrule Wells=s sole
point.

                                        V. 
Conclusion

Having overruled Wells=s single
point on appeal, we affirm the trial court=s
judgment.

 

SUE
WALKER

JUSTICE

 

PANEL: GARDNER, WALKER,
and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

MCCOY, J. filed a
concurring opinion.

 

DELIVERED: July 2, 2009











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-380-CR

 

 

BRADLEY
CHANCE WELLS                                                    APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY CRIMINAL
COURT NO. 3 OF DENTON COUNTY

 

                                              ------------

 

                    CONCURRING MEMORANDUM
OPINION[1]

 

                                              ------------








I concur in the outcome reached by the majority
and write only to point out that the strict application of the wording of this
statute can lead to what I believe to be an unintended result.  For example, if two streets are closer than
100 feet apart, the driver is required to begin signaling a turn before the
first street, indicating to other drivers he is about to turn, but must proceed
through the intersection with the first street before turning on the second
street.  If a driver is searching for a
street name and cannot, as in all likelihood, read the street name 100 feet
away, then after he identifies the street on which he wishes to turn, he must
drive through the intersection, turn around at some point in the distance, and
return to the street to make his desired turn. 
The same scenario plays out in dense fog or a nighttime heavy rain.  For these reasons, the statute should speak
in terms of reasonableness, and not absolutes, and I believe it invokes the
doctrine of unintended consequences.

 

 

BOB
MCCOY

JUSTICE

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: July 2, 2009











[1]See Tex. R. App. P. 47.4.





[2]We agree with the
concurrence that the hypothetical facts proposed by the concurrence could be
problematic.  Those hypothetical facts,
however, are not the facts here and do not control whether Officer Grey
possessed reasonable suspicion that Wells had committed a traffic offense.





[3]See Texas Transp. Code Ann. ' 545.104(b) (Vernon
1999).





[4]During oral argument to
this court, Wells suggested several indicators that an officer could look for
to determine a driver=s intention to turn, such
as slowing the vehicle=s speed, pulling the
vehicle off to the side of the road, or driving in a turn-only lane.





[1]See Tex. R. App. P. 47.4.